IN THE
CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

DANIEL HUMAN, individually and )
on behalf of all others similarly situated, )
                                )
           Plaintiffs. )
                                )
Vs. )
                                )
Groundworks FRS, LLC )
d/b/a Foundation Recovery Systems )
                                )
                                )
Reg. Agent Corporation Service Company )
251 Little Falls Dr. )
Wilmington, New Castle, DE 19808 )
                                )
           Defendants. )

FILED

AUG 1 4 2024

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

No.     24SL-CC03764

COMPLAINT CLASS ACTION

JURY TRIAL DEMANDED

**COMPLAINT CLASS ACTION**

Plaintiff, Daniel Human, appearing both individually and on behalf of all others similarly situated, by and through his attorney, files this Class Action Complaint against Defendant, Groundworks FRS, LLC ("FRS"), based upon personal knowledge as to his own acts and experiences and, as to all other matters, based upon information and belief and the investigation conducted by his counsel, and alleges as follows:

**Nature of the Action**

1.      This is a class action under the Missouri No Call List and Telemarketing prohibitions set forth in §407.1098.1 and Mo. Rev. Stat. § 407.1076.

2.      This is also a class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), and 47 U.S.C. § 227(b)(1)(A), and  a federal statute enacted in

1

response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

3.　　　Defendant Groundworks FRS. LLC, d/b/a Foundation Repair Services offers a service where they solicit for consumers for their foundation and construction services.

4.　　　Defendant FRS uses robocalling, artificial intelligence automated systems, area code spoofing technology and technology to block or otherwise circumvent a consumer's use of a caller identification service, to make outbound telemarketing calls/texts to thousands, if not millions of consumers across U.S., to harass and annoy individuals in an effort to market their services.

5.　　　By doing so, Defendant FRS violated the Missouri No Call List and Telemarketing prohibitions set forth in §407.1076(3)(11), §407.1098.1 RSMo., and violated 47 U.S.C. § 227(c)(5) and 47 U.S.C. § 227(b)(1)(A) of the Telephone Consumers Protection Act ("TCPA") when it contacted numbers on the Missouri and National Do Not Call Registries without their express written consent.

6.　　　Defendants have caused Plaintiff and Class Members to suffer injuries as a result of placing unwanted robotic, Automatic Telephone Dialing Systems ("ATDS"), artificial intelligence generated and direct dialed telephonic calls/texts to their private residential telephones.

7.　　　Through this action, Plaintiff seeks injunctive relief to halt Defendant FRS's unlawful telemarketing calls and texts. Plaintiff additionally seeks damages as authorized by the MDNC and TCPA on behalf of Plaintiff and the Class Members, and any other available legal or equitable remedies resulting from the actions of Defendant described herein.

2

8.      Because telemarketing calls/texts typically use technology capable of generating thousands of similar calls per day, the Plaintiff sues on behalf of a proposed nationwide class of other people who received similar calls/texts.

9.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing practices and violations and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Missouri Supreme Court Rule 52.08.

II.      Parties

10.      Plaintiff Daniel Human (hereinafter "Plaintiff" or "Mr. Human") is an individual residing in this District and a resident of St. Louis County, Missouri.

11.      Defendant Groundwork FRS, LLC, d/b/a Foundation Repair Services ("FRS") is a Delaware based corporation, a foreign corporation registered to conduct business in the State of Missouri and is a company that makes telemarketing calls or employs its agents, vendors or third party marketing partners to make telemarketing calls within and into this District, to persons on the Federal and Missouri do not call registries, just as it did with the Plaintiff, with its Registered Agent, Corporation Service Company at 251 Little Falls Dr. Wilmington, New Castle, DE 19808.

**Jurisdiction and Venue**

12.      This Court has jurisdiction for violations of the Missouri do not call registries under Chapter 407.010 et seq. *RSMo.* As stated in *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012), the Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5) and 47 U.S.C. § 227(b)(1)(A) of the TCPA.

13.      This Court has personal jurisdiction over Defendant FRS because they either reside in this District and/or made the calls into this District, and/or they promulgated the policies

3

and procedures and/or had the right to do so for Defendants FRS which encourage, entice, condone, and ratify illegal telemarketing calls into this District to persons on the no call lists. Moreover, Defendant FRS has sufficient minimum contacts with the State of Missouri and this District in that they are a registered foreign corporation in Missouri, it transacts business in Missouri, profits personally from Defendant FRS's harassing and annoying calls, and any sales derived from Missouri residents, they send their products to Missouri and advertise in Missouri; the extraterritorial tortious acts complained of within this complaint occurred in Missouri and to a Missouri resident, thereby subjecting them to Missouri's long arm statute, Section 506.500.1. See *Prosser v. USHealth Advisors, LLC*, 2023 WL 5093872 (E.D. Mo. August 9, 2023); *UMB Bank, N.A. v. Kraft CPAs, PLLC*, 2023 WL 3666879 (U.S. Dist. Ct, W.D. Mo. May 25, 2023); *Hand v. Beach KC, LCC*, 425 F.Supp.1096 (W.D. Mo. 2019).

14.    Venue is proper in that the tortious acts complained of herein occurred in Jefferson County, Missouri. Moreover, venue is proper in the event of transfer in accord with 28 U.S.C 1391(b) because the calls at issue were made into this District and/or from this District.

**THE MISSOURI NO-CALL LAWS**

15.    The Missouri Do Not Call Registry, Mo. Rev. Stat. § 407.1098.1 provides:

No person or entity shall make or cause to be made any telephone
solicitation to the telephone line of any residential subscriber in this state
who has given notice to the attorney general, in accordance with rules
promulgated pursuant to section 407.1101 of the subscriber's objection to
receiving telephone solicitations.

16.    A "residential subscriber" is defined as, "a person who has subscribed to residential telephone service from a local exchange company or the other persons living or residing with such person." Mo. Rev. Stat. § 407.1095(2).

4

17. Defendant's calls to a telephone subscriber on the Missouri Do Not Call List is an unfair practice, because it violates public policy, and because it forced Plaintiff to incur time and expense without any consideration in return.

18. Defendant's practice effectively forced Plaintiff to listen to Defendant's unlawful, harassing, and annoying sales campaign.

19. Defendant violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public policy violations in the aggregate caused substantial concrete injury to hundreds of thousands of persons.

20. Defendant's actions prevented the Plaintiff's telephone from being used for other purposes during the time Defendant was illegally occupying the Plaintiff's telephone for Defendant's unlawful purpose.

21. Mo. Rev. Stat. § 407.1076 provides in pertinent part:

It is an unlawful telemarketing act or practice for any seller or telemarketer to engage in the following conduct:

(3) Cause the telephone to ring or engage any consumer in telephone conversation repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive or harassing;

(4) Knowingly and willfully initiate a telemarketing call to a consumer, or transfer or make available to others for telemarketing purposes a consumer's telephone number when that consumer has stated previously that he or she does not wish to receive solicitation calls . . .

(10) Knowingly provide assistance or support to any telemarketer when that person knows or consciously avoids knowing that the telemarketer is engaged in any act in violation of sections 407.1070 to 407.1085; or

(11) Knowingly utilize any method to block or otherwise circumvent a consumer's use of a caller identification service.

22.     Chapter 407.1107(2) provides for up to $5,000 in damages for each knowingly violation.

## TCPA Background

23.     In 1991 Congress enacted the TCPA to regulate explosive growth of the telemarketing industry. In so doing, Congress recognized that "[un]restricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. 102-243 § 2(5) (1991)(codified at  47 U.S.C. § 227(b)(1)(A)).

24.     The National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone calls at those numbers. *See* 47 U.S.C. § 227(b)(1)(A).

25.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

26.     The TCPA and implementing regulations prohibit the initiation of telephone calls to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(b)(1)(A). Damages under this code are up to $1,500 per call or text.

### III.     Factual Allegations

27.     Defendant FRS is a business organization and their agents, employees and/or vendors, solicit consumers to purchase their foundation and construction services.

28.    To generate leads, Defendant FRS, and their agents, employees and/or vendors, and other unknown marketing firms and call centers, uses random, robocall and automated dialing system generated telemarketing calls/texts capable of storing and deploying randomly generated and sequential calls to reach the maximum number of consumers who have never had a relationship with any of the Defendants, and who never consented to receive their calls.

29.    Defendant FRS also utilizes area code spoofing technology and computer systems to block or otherwise circumvent called numbers caller identification functions.[1] By "spoofing" area codes to show as a local area code to increase the likelihood that the Plaintiff would believe that it was a local call for legitimate purposes, instead of an unsolicited marketing or solicitation call from Defendant FRS and its employees, vendors and/or agents.

30.    Plaintiff is and was at all times mentioned herein, a "person" as defined by 47 U.S.C. §153(39) and a qualified Missouri subscriber who has lodged his objections to the Missouri Attorney General over receiving any telemarketer calls, whatsoever.

31.    The Plaintiff personally registered his residential cellular telephone number (the "Number"), 314-915-XXXX on the National and Missouri State Do Not Call Registries in June 2022, where they have remained continuously since.  Plaintiff has been the sole subscriber and in sole possession of the phone called for more than 4 years.

32.    Despite this, Defendant FRS, and their agents, employees and/or vendors, as approved, encouraged, enticed, and ratified by Defendant FRS's policies, practices and

---

[1] Telemarketers cause a local areas code and number to appear on the recipients' caller ID in order to deceptively increase the likelihood that the recipient will pick up the call. For example, Velocify, offers automated outbound dialer software that gives users the ability to "[o]perate like a local business and boost contact rates by calling prospects from their own area code." *See* http://pages.velocify.com/rs/522-DJL-243/images/velocify-pulsecommunication.

procedures, placed more than ten (10) automated and computer-generated telemarketing calls/texts, when the first call was made to the Plaintiff from telephone number (888) 493-2384, and this and all calls received by the Plaintiff had the caller identification functioned circumvented so the Plaintiff could not identify the caller and was deceived into believing that there was a problem with family or friends in Missouri and answered the unsolicited telemarketing calls.

| | | | |
|---|---|---|---|
| a. | 8/7/24 | 10:44 am | (888) 493-2384 |
| b. | 8/7/24 | 10:43 (text) | (833) 383-0074 |
| c. | 8/7/24 | 10:45 am | (888) 493-2384 |
| d. | 8/7/24 | 2:46 pm | Same |
| e. | 8/7/24 | 8:08 pm | Same |
| f. | 8/8/24 | 10:46 (text) | (833) 383-0074 |
| g. | 8/10/24 | 10:59 am | (888) 493-2384 |
| h. | 8/10/24 | 11:15 (text) | (833) 383-0074 |
| i. | 8/11/24 | 8:28 (text) | (833) 383-0074 |
| j. | 8/11/24 | 2:34 pm | (888) 493-2384 |

33.     During this series of calls, the Defendant's third-party telemarketers identified Defendant FRS and solicited Mr. Human to purchase remodeling services.

34.     Mr. Human did not have a prior business relationship with Defendant FRS.

35.     Plaintiff never provided Defendant FRS with consent to call his private residential telephone number.

36.     Each of the illegal telemarketing calls were condoned, encouraged, enticed and ratified by Defendant FRS and their agents, employees and/or vendors:

8

37.     During each text made with automatically generated and random generating computer equipment the telemarketer annoyed and harassed Mr. Human to engage their services.

38.     The Defendant persistently harassed, humiliated, annoyed and solicited Mr. Human even though he is registered on the Federal and Missouri Do Not Call registry and has been for many years prior to their unsolicited calls to his private, personal residential cell phone.

39.     Plaintiffs' privacy and right to seclusion have been grossly, deliberately, and repeatedly violated by the above-described telemarketing calls and Plaintiff was severely annoyed, harassed and humiliated by these repeated telemarketer calls.

40.     The Plaintiff never provided his prior express written consent to receive, nor did he ever request these calls.

41.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their rights to privacy and seclusion have been violated, they were annoyed, harassed and caused severe physical injuries, incurring telephone service provider fees, wear and tear on his phone, damage and disruption to his phone's battery life, and other injuries and costs.

42.     Defendant FRS and its telemarketer vendors made, and continue to make, these telemarketing calls to individuals nationwide without their prior written express consent to do so.

43.     During all the calls after the initial call was answered it was obvious that they were made by automatic yet random equipment by the Defendant as each prefaced by automated clicks, computer squeals, pauses, and dead air space before the telemarketer began speaking. This artificial intelligence and automated computer use of randomly generated phone numbers are akin to the illegal calls made using predictive dialers:

9

> Predictive dialers initiate phone calls while telemarketers are talking to
> other consumers . . . In attempting to "predict" the average time it takes
> for a consumer to answer the phone and when a telemarketer will be free
> to take the next call, predictive dialers may either "hang-up" on consumers
> or keep the consumer on hold until connecting the call to a sales
> representative, resulting in what has been referred to as "dead air."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶ 146, 18 FCC Rcd. 14014, 14101, 2003 WL 21517853, *51 (July 3, 2003), *available at* http://hraunfoss.fcc.gov/edocs _public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*").

44.    Defendant FRS, and their agents, employees and/or vendors placed numerous computer-generated calls alleged in this complaint with the use of random and sequential telephone number generating equipment. Predictive dialers constitute an automatic telephone dialing system; they are capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. Further, no human manually entered Plaintiff and Class members' cellular telephone number when Defendants made the texts alleged below. Rather, the predictive dialer(s) electronically dialed Plaintiff and Class members' cellular telephones in an automated fashion. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

45.    None of the telephone calls/texts alleged in this complaint constituted calls/texts for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

46.    In addition, the texts occupied their telephone lines, rendering them unavailable for legitimate communication and personal family affairs and caused the Plaintiff to incur provider fees, suffer the wear and tear on his phone equipment, and the degradation of his battery life,

invaded his rights to privacy and seclusion, and the calls were harassing, frustrating, annoying and abusive.

### Class Action Allegations

47.    Class Definition: Plaintiff seeks to certify a class and brings this Complaint against the Defendants, as authorized by Missouri Supreme Court Rule 52.08 and pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), on behalf of himself and the following Classes:

> **Missouri Do Not Call Class ("MDNC Class"):**
> All persons in the State of Missouri (1) who had his or her telephone number(s) registered with the Missouri Do-Not-Call registry for at least thirty days; (2) who received more than one telephone call or text made by or on behalf of Defendants that promoted their products and services; (3) within a 12-month period; and (4) for whom Defendants had no current record of consent to place such calls to him or her.

> **Do Not Call Class ("DNC Class"):**
> All persons in the United States (1) who had his or her telephone number(s) registered with the national Do-Not-Call registry for at least thirty days; (2) who received more than one telephone call made by or on behalf of Defendants that promoted their products or services; (3) within a 12-month period; and (4) for whom Defendants had no current record of consent to place such calls to him or her.

> **Robocall Class and Automatic Telephone Dialing System Class:**
>
> All persons in the United States who received any telephone calls from Defendants or their agents on their cellular phone service through the use of any automatic telephone dialing system or artificial or pre-recorded voice system, which telephone calls by Defendants or their agents were not made for emergency purposes or with the recipients' prior express consent, within four years prior to the filing of this Complaint.

48.    A substantial number of the events which give rise to the claim occurred in St. Louis County, Missouri. Therefore, under Local Rule, this civil action should be assigned to the

Circuit Court of St. Louis County, Missouri. In the event the Defendant seeks to remove this case to federal Court, the appropriate venue lies in the St. Louis Division of the United States District Court for the Eastern District of Missouri under Missouri's Long Arm Statute.

49.    Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the Classes are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise the Class definitions based on facts learned during discovery. Plaintiff is a member of each Class.

50.    Class Numerosity: The exact number of members of each Class is unknown and is not available to Plaintiff currently, but such information is readily ascertainable by Defendant and their agents. The Classes are so numerous that joining all members is impractical. Plaintiff alleges that there are more than 40 members of each Class.

51.    The Class as defined above are identifiable through phone records and phone number databases and defendants business records.

52.    The potential members of the Class number at least in the hundreds.

53.    Individual joinder of these persons is impracticable.

54.    Plaintiff is a member of the Class.

55.    Class Commonality: Common questions of fact and law exist as to all members of the Classes and predominate over the questions affecting only individual members of the Classes. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the Class member. The predominant common questions include:

12

a.    Whether Defendant's used an "automatic telephone dialing system" or as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

b.    Whether Defendant had written prior express consent to call Class members prior to making telemarketing calls;

c.    Whether Defendants systematically made telephone calls to members of the DNC and MDNC Classes whose telephone numbers were registered with the Missouri and national Do-Not-Call registries;

d.    Whether Defendant systematically made telephone calls/texts to members of the DNC and MDNC Classes where Defendants did not have a current record of consent to make such telephone calls/texts;

e.    Whether Plaintiff and Class Members are entitled to damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and Class Members are entitled to treble damages; and

f.    Whether Plaintiff and Class Members are entitled to injunctive relief for violations of their privacy and attorney's fees and costs.

56.    The Plaintiffs' claims are typical of the claims of members of the Class. Plaintiff is not different in any relevant way from any other member of the Classes, and the relief he seeks is common to each Class.

57.    Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he has hired attorneys experienced in class actions, including TCPA class actions.

58.    Predominance and Superiority: The Classes alleged in this Complaint are

appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendant's misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

59.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns the identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents, vendors, subsidiaries, and sub-contractors.

60.     Injunctive Relief is Appropriate: Based on information and belief, Defendant FRS, and their agents, employees and/or vendors continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

14

61.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**COUNT I**
**Violations of the MDNC Against All Defendants**
**by Plaintiff Individually and on Behalf of the MDNC Class**

62.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 61 as though set forth herein.

63.    Plaintiff brings this claim individually and on behalf of the Missouri No Call List Members ("MDNC") against the Defendant.

64.    Defendant FRS acts and omissions of making ten 10) or more calls/texts to Plaintiff's private residential phone constitute multiple violations of the MDNC in that No person or entity shall make or cause any telephone to ring and make any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section § 407.1073, § 407.1076, §407.1090, §407.1098.1 of the subscriber's objection to receiving telephone calls.

65.    Defendant failed to secure prior express written consent from Plaintiff and the Class Members prior to making these and other calls/texts.

66    In violation of the MDNC, Defendant made and/or knowingly allowed automated telephonic calls/texts to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent and after notice to the Missouri Attorney General was given that they did not want to receive said calls/texts.

67.    Defendants made and/or knowingly allowed the telephonic calls/texts to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers, used a robotic interface with the Plaintiff, disabled the Caller I.D. function so

15

Plaintiff could not identify the caller prior to answering the call/text, spoofed the area codes to deceive Plaintiff to answer the unsolicited calls.

68.     As a result of Defendant's conduct, and pursuant to §407.1076(3)(11), §407.1098.1 § 407.1073 of the MDNC, Plaintiff and Class members were harmed and are each entitled to a maximum of $5,000.00 in damages for each violation.

69.     Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**WHEREFORE**, Plaintiff Human and all members of the MDNC class prays for judgment against Defendant FRS, for $5,000.00 per violation or $50,000.00 (for Human's damages), and for additional damages for each class member predicated upon the calls received, and for their attorney's fees and costs, appropriate injunctive relief, and for such further relief deemed just and equitable in the premises.

## Count II
## Telephone Consumer Protection Act (Violations of 47 U.S.C. § 227(b)(1)(A) (On behalf of Plaintiff and the Robocall and ATDS)

70.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 69 as if fully set forth herein.

71.     The foregoing acts and omissions of Defendant FRS and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf through the use of an automated telephone dialing system constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls/texts, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

72.     The foregoing acts and omissions of Defendant FRS, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple

16

violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls/texts, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

73.    The Defendant's violations were negligent, willful, or knowing.

74.    As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the Class presumptively are entitled to an award of $1,500 in damages for every call/text made.

75.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls/texts to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendant FRS, as follows:

(a) For an order certifying the Classes and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an award of statutory damages for Plaintiff and each member of the Classes, beginning with Plaintiff Human in an amount of $15,000.00; and for additional damages for each class member based on their individual receipt of these unsolicited telemarketing calls.

(c) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) Such further and other relief as the Court deems necessary.

## COUNT III
### Violations of the TCPA Against the Defendant
### by Plaintiff Individually and on Behalf of the DNC Class

76.     Plaintiff hereby incorporates by reference as though set forth fully herein paragraphs 1 through 75. Plaintiff asserts this claim on behalf of himself and members of the Do Not Call Registry Class.

77.     47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone calls to which they object.

78.     The foregoing acts and omissions of Defendant FRS, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf by calling and texting the Plaintiff's residential cell phone more than ten (10) calls/texts within a twelve (12) month period in contravention of 47 U.S.C. 227, constitute numerous and deliberate violations of the TCPA, by making telemarketing calls/texts, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

79.     Defendant FRS's violations were negligent, willful, or knowing.

80.     As a result of Defendant FRS and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227 et seq., Plaintiff and members of the Class presumptively are entitled to an award of $1,500 in damages for each and every call/text made.

81.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant FRS from making similar calls/texts to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendant FRS as follows:

(a) For an order certifying the Classes and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an award of statutory damages for Plaintiff and each member of the Classes in an amount exceeding $15,000.00.

(c) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(d) For an order finding in favor of Plaintiff and the Classes on all Counts asserted herein;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) Such further and other relief as the Court deems necessary.

## COUNT IV
### Defendant's Vicarious Liability

***COMES NOW***, Plaintiff and for his Fourth cause of action against Defendant FRS, states:

82.     Plaintiff reasserts and incorporates fully herein by reference paragraphs 1 through 81 above paragraphs as though fully set forth herein.

19

83.    For 28 years now, the FCC has made clear that "the party on whose behalf a [call/text] is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the TeL Consumer Prot. Act of 1991,* 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

84.    In 2013 the FCC explained again in detail that a defendant "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC,* 28 F.C.C. Rcd. 6574 (2013). Both actual and apparent authority, and ratification, can be a basis for a finding of vicarious liability. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

85.    The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were ***judgment proof, unidentifiable, or located outside the United States, as is often the case.*** Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of `independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

86.    The FCC has **rejected** a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

87.    A connection exists between the Defendant herein and the calls/texts complained of by Plaintiff because the calls/texts were directly made on behalf of Defendant FRS so they could profit from a common enterprise in which they participated.

88.    "As the FTC has explained in its Compliance Guide, `taking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability.'" *FTC v. Chapman,* 714 F.3d 1211, 1216-1219 (l0th Cir. 2013).

89.    Defendant FRS, is vicariously liable for their independent third-party marketing agents phone calls/texts at issue because Defendant FRS substantially participated, promulgated the policy and ratified making the calls/texts to persons on the no call list without their express written consent.

90.    Defendant FRS is further vicariously liable for the calls complained of by Plaintiff herein because they:

a)    authorized or caused telemarketers, employees, agents, vendors to initiate the phone calls/texts or initiated the calls/texts themselves;

b)    directly or indirectly controlled the persons who actually made or initiated the calls/texts;

c)    allowed the telemarketers and independent agents access to information and operating systems within Defendant's control for the purpose of seeking to sell their services, without which they would not be able to maintain and further robocalling atds, computer generated texting, and direct dialing.

d)    allowed the telemarketers and independent contracting agents to enter or provide consumer information into Defendant's sales or operational systems.

e)    approved, wrote, reviewed, or participated in developing the telemarketing sales

scripts to sell their services.

f)    Defendant FRS knew or reasonably should have known or consciously avoided

knowing that the actual telemarketers were violating the law and Defendant failed to take

effective steps within their power to require compliance, or

g)    Defendant FRS gave substantial assistance or support to the telemarketers,

employees, agents or vendors and each other while knowing, consciously avoiding

knowing, or being recklessly indifferent to the fact that these were engaged in acts or

practices that violated the TCPA and MDNC and ratified each of the illegal calls/texts.

91.    Defendant FRS's telemarketers had apparent authority to engage in the

autodialing, direct dialing, and robocalling at issue herein because after Plaintiff patiently

listened the scripted pitch the Defendant's all profited from each and every sale they made

thereby ratifying their illegal practice.

92.    Defendant FRS ratified the robocalls and automatic and computer-generated calls

to Plaintiff described above because they accepted and intended the benefits to them of the calls

while knowing or consciously avoiding knowing their telemarketer-agents were calling and

robocalling cell phones and phone numbers listed on the Federal and Missouri State Registry

without complying with the Registry and without prior express written consent of the robocalled,

and called consumers.

93.    As a direct and proximate result of the ten (10) illegal calls by the above

Defendant, Plaintiff suffered the gross violation of his rights to privacy, solace and seclusion as

set forth above, he was frustrated, harassed, annoyed, as well as suffered monetary loss in phone

provider service fees, wear and tear on his phone equipment, and the degradation of his battery

life.

**WHEREFORE**, Plaintiff prays for entry of judgment against Defendant FRS, and their independent contracting agents for their vicarious liability for an additional $65,000.00 and for his statutory, actual and/or treble damages sufficient in size to set a stern example and deter in the future like conduct complained of by Defendant or others. Plaintiff prays for such other and further relief as the court finds proper. Plaintiff requests an award of his attorney fees, costs and pre and post judgment interest.

Respectfully submitted,

Daniel Human

10423 Conway Rd.

St. Louis, Mo. 63131

(208) 390-XXXX

danh11polo@gmail.com

COUNTY OF ST. LOUIS      )

                                    ) SS.

STATE OF MISSOURI        )

Now, on this 10th day of August, 2024, a person personally known and identified to me as Daniel Human, did personally appear before me, and being first duly sworn upon his oath, deposed and stated that the facts contained in the above class action petition were true and correct to the best of his knowledge and belief.

Daniel Human

Date

CHARLI JAE CRAVEN
Notary Public, Notary Seal
State of Missouri
St. Louis County
Commission # 22905845
My Commission Expires 06-20-2026

Notary Public

23